1
2
3
4
5
6                    **UNITED STATES DISTRICT COURT**
7                      EASTERN DISTRICT OF CALIFORNIA
8
9   JESSE PRADO OLMEDO,                    Case No. 1:14-cv-00621-SMS
10              Plaintiff,
                                           ORDER REVERSING AGENCY'S DENIAL
11        v.                               OF BENEFITS AND REMANDING
                                           FOR FURTHER PROCEEDINGS
12  CAROLYN W. COLVIN, Acting
    Commissioner of Social Security,
13
                 Defendant.
14

15
16          Plaintiff Jesse Prado Olmedo seeks judicial review of a final decision of the Commissioner of

    Social Security ("Commissioner") denying his application for disability insurance benefits pursuant
17
    to Title II and for supplemental security income ("SSI") pursuant to Title XVI of the Social Security
18
    Act (42 U.S.C. § 301 *et seq.*) (the "Act").  The matter is before the Court on the parties' cross-briefs,
19
    which were submitted, without oral argument, to the Honorable Sandra M. Snyder, U.S. Magistrate
20
    Judge.
21
            The sole issue presented is whether the Administrative Law Judge ("ALJ") erred by failing to
22
    include all of Plaintiff's limitations in her hypothetical questions to the vocational expert.  Following
23
    a review of the complete record and applicable law, the Court finds that the ALJ erred in omitting
24
    additional limitations identified by the examining and non-examining physicians.  Accordingly, the
25
    Court reverses the Commissioner's decision and remands for further proceedings.
26
    ///
27  ///
28
                                                1

I.      **Procedural History**

On July 29, 2010, Plaintiff filed separate applications for disability insurance benefits and supplemental security income.  In both applications, Plaintiff alleged disability beginning March 13, 2010.  The Commissioner initially denied the claims on December 14, 2010, and upon reconsideration, on June 6, 2011.  On August 24, 2011, Plaintiff filed a timely request for a hearing.

Plaintiff appeared without legal representation and testified at a hearing on August 2, 2012.  Malcolm Brodzinsky, an impartial vocational expert, also appeared and testified.

On October 16, 2012, Administrative Law Judge Susan Lewald denied Plaintiff's application.  The Appeals Council denied review on February 4, 2014.  On April 25, 2014, Plaintiff filed a timely complaint seeking this Court's review.

II.     **Factual Background**

A.      **Plaintiff's Testimony**

Plaintiff (born February 26, 1980) last worked in 2008, as a restaurant cook and a landscaper.  While working as a landscaper, he injured his back as he loaded wood onto a truck.

Plaintiff now has back pain from his head down to his legs.  Walking aggravates his leg pain.  His doctors have been unable to identify an effective pain reliever that will not damage his liver and kidneys.  Plaintiff experiences migraine headaches, and has diabetes, high blood pressure, and elevated cholesterol.  He is also receiving psychiatric treatment.  His prescriptions include Gabapentin,[1] Methocarbamol (Robaxin),[2] Metformin,[3] Latuda,[4] Bupropion,[5] Clonazepam,[6] Excotelabrim, and Diphenhydramine.[7]  Plaintiff was five feet, five inches tall and weighed 336 pounds.  (Plaintiff had recently lost weight after reaching a high of 386 pounds.)

---

[1] Gabapentin is an anticonvulsant used to help control seizures in persons with epilepsy.  It is also prescribed for post-herpetic neuralgia and diabetic neuropathy.  www.nlm.nih.gov/medlineplus/druginfo/meds/a694007.html (May 11, 2015).
[2] Methocarbamol is a muscle relaxant prescribed to relieve pain and discomfort due to muscle injuries.  www.nlm.nih.gov/druginfo/meds/a682579.html (May 11, 2015).
[3] Metformin is prescribed to treat type 2 diabetes.  www.nlm.nih.gov/medlineplus/druginfo/meds/a696005.html (May 11, 2015).
[4] Latuda (lurasidone) is prescribed to treat the symptoms of schizophrenia.  www.nlm.nih.gov/medlineplus/druginfo/meds/a611016.html (May 11, 2015).
[5] Bupropion is prescribed to treat depression.  www.nlm.nih.gov/medlineplus/druginfo/meds/a695033.html (May 11, 2015).
[6] Clonazepam is prescribed to control seizures and panic attacks.  www.nlm.nih.gov/medlineplus/druginfo/meds/a682279.html (May 11, 2015).
[7] Diphenhydramine is used to relieve symptoms of colds or allergies and to treat insomnia.  www.nlm.nih.gov/druginfo/meds/1682539.html (May 11, 2015).  Plaintiff testified that his doctor prescribed Diphenhydramine to help him sleep.

In response to a headache questionnaire, Plaintiff reported daily severe headaches since July 2009.  His headache symptoms included pounding, straining, migraines, tension, dizziness, and grouchiness.  The pain went from the middle of his head into his back.  Sometimes anxiety, stress, or leg pain triggered the headaches.  He treated his pain with Motrin or when very severe, Vicodin.

In his adult function report dated April 8, 2011, Plaintiff complained of depression, noting pain and voices in his head that tried to get him to do things.  He was frightened and had lost the confidence that he previously had.  He didn't care how he looked, but his wife and children made him bathe and change clothes.  Food had no taste. His wife cared for him, taking care of the family's finances and forcing him to go out shopping with her.

Plaintiff wrote that he often didn't feel good or felt medicated—drowsy and sleepy.  He experienced difficulty walking and lifting.  His condition affected his ability to lift, squat, bend, stand, walk, kneel, climb stairs, remember, concentrate, understand, and follow instructions.  Describing himself as "useless' and "waiting to die," Plaintiff wrote that he needed professional help.

**B.**     **<u>Third-Party Adult Function Report</u>**

In a third-party adult function report dated April 8, 2011, Plaintiff's wife, Joanna Olmedo, reported that Plaintiff heard voices which frightened him.  He was forgetful, depressed, and spoke of suicide.  He lacked motivation to do anything and suffered from social anxiety.  Plaintiff experienced severe knee pain.  Pain and voices in his head kept Plaintiff from sleeping.  He needed reminders to take care of his personal hygiene.  Although he was able to cook for himself, Mrs. Olmedo usually prepared the family's meals.

Plaintiff did not have a driver's license.  He was a poor money manager, likely to lose any money he has.  Although he used to enjoy playing horseshoes with friends and family, he no longer wants to socialize.  Plaintiff resists participating in family functions, such as holiday celebrations.  Mrs. Olmedo feared that Plaintiff would commit suicide.

Mrs. Olmedo reported that Plaintiff's conditions affected lifting, squatting, bending, standing, walking, kneeling, stair climbing, memory, concentration, understanding, and following instructions.  His memory was failing.  Mrs. Olmedo helped Plaintiff with written instructions and reminded him

///

3

1  of instructions as needed.  Plaintiff had no problems with supervisors, but was bullied by co-

2  workers, eventually fighting with one.

3  **C.      Medical Record**

4        On March 22, 2010, Belen S. Clark, M.D., of Community Action Family Health Center

5  ("Community Action")[8] examined Plaintiff after an emergency room referred him to his primary care

6  physician.  Dr. Clark diagnosed obesity and type 2 diabetes.  The doctor prescribed diet, exercise,

7  weight loss, and Metformin,[9] and sent Plaintiff for lab tests.

8        On May 14, 2010, when Plaintiff returned for his lab results, a prescription for Victoza[10] was

9  added.[11]  Plaintiff was also seen on May 28, 2010.  On July 1, 2010, the medical provider

10  discontinued Victoza.  On August 23, 2010, Plaintiff complained of pain in his right back and both

11  legs.  The examining physician prescribed Lovastatin,[12] Lisinopril,[13] Metformin, Glyburide,[14]

12  Vicodin,[15] and Robaxin (Methocarbamol).

13        Evaluating x-rays taken August 31, 2010, radiologist Michael Rappaport, M.D., opined that

14  the chest x-rays were clear and that the lumbosacral spine x-rays revealed mild scoliosis, slight

15  intervertebral disc space narrowing at L 4-5, and spina bifida occulta at L5.

16        In a September 1, 2010 treatment note, the Community Action provider noted that Plaintiff

17  had not sought x-rays or lab work until the day before.  The provider noted, "Wants more pain

18  medication, doesn't want to exercise—Refuses to talk about anything ELSE other than narcotics and

19  rest."  AR 240.  The provider added, "Poor effort at compliance—poor compliance."  AR 240.  After

20  warning Plaintiff of the dangers of narcotics and Tylenol, the provider prescribed Norco[16] and

21

---

22  [8] The records from Community Action are hand-written and frequently illegible.
    [9] Metformin is prescribed to treat type 2 diabetes.  www.nlm.nih.gov/medlineplus/druginfo/meds/a696005.html (May 11, 2015).

23  [10] Victoza is prescribed to control blood sugar levels in adults with type 2 diabetes.
    www.nlm.nih.gov/medline/druginfo/meds/a611003.html (May 11, 2015).

24  [11] Other than Dr. Clark on March 22, 2010, the Court is unable to identify the individuals who signed the progress notes at Community Action.
    [12] Lovastatin is prescribed to patients with high cholesterol.

25  www.nlm.nih.gov/medlineplus/druginfo/meds/a688006.html (May 11, 2015).
    [13] Lisinopril is prescribed to treat high blood pressure.  www.nlmn.nih.gov/medlineplus/druginfo/meds/a692051.html

26  (May 11, 2015).
    [14] Glyburide is a sulfonylurea drug prescribed to treat type 2 diabetes.

27  www.nlm.nih.gov/medlineplus/druginfo/meds/a684058.html (May 11, 2015).
    [15] Vicodin (hydrocodone bitartarate and acetaminophen), a Schedule II narcotic, is prescribed for moderate to moderately
    severe pain.  www.vicodin.com/hcp?cid=ppc_ppd_vcdn_ggl_ppc_3202 (May 11, 2015).

28  [16] Norco (Acetaminophen and Hydrocodone) is a narcotic pain reliever.
    www.nlm.nih.gov/medlineplus/druginfo/meds/a601006.html (May 11, 2015).

Januvia.[17]  On September 8, 2010, Plaintiff returned for test results.  He requested a prescription of Vicodin instead of Norco.

On November 6, 2010, internist Sarupinder Bangoo, M.D., prepared a comprehensive internal medicine evaluation for the agency.  Plaintiff reported shortness of breath due to asthma and back and leg pain, rated 9/10.  Describing Plaintiff as "extremely obese," Dr. Bangoo observed that Plaintiff limped, leaned heavily on a cane, and refused to walk without the cane.  AR 233.  Plaintiff was unable to perform heel and toe walking.  Plaintiff was very shaky and refused to climb onto the examining table.  Dr. Bangoo diagnosed asthma, morbid obesity, and bilateral leg pains, likely caused by obesity.  The doctor opined that Plaintiff could sit, stand, or walk for six hours in an eight-hour workday; could lift and carry twenty pounds occasionally and ten pounds frequently; would have difficulty bending, stooping, and crouching; and had no manipulative limitations.

On December 13, 2010, medical consultant L. Bobba, M.D., prepared a physical residual functional capacity assessment.  Dr. Bobba opined that Plaintiff could occasionally lift twenty pounds and frequently lift ten pounds; could stand, walk, and sit six hours in an eight-hour work day; had unlimited ability to push and pull; could occasionally climb, balance, stoop, kneel, crouch, and crawl; and should avoid concentrated exposure to fumes, odors, dust and hazards such as machinery or heights.

On April 15, 2011, physician assistant Paul Runyan, PAC, treated Plaintiff for a productive cough.  Plaintiff complained that he was still hearing mumbled voices.  Runyan summarized his psychiatric exam:

> The patient has a flat affect.
> The patient is anxious, does not exhibit compulsive behavior, does not behave appropriately for age, has normal knowledge, has normal language, is not in denial, is not euphoric, is not fearful, does not have flight of ideas, is forgetful, does not have thoughts of grandiosity, is positive for auditory hallucinations, feels hopeless, does not have increased activity, is having mildly impaired short term memory, has no mood swings, has no obsessive thoughts, does not have paranoia, has normal insight, exhibits normal judgment, has poor attention span and concentration (characterized as alert), does not have pressured speech, and has suicidal ideation.

---

[17] Januvia (Sitagliptin) is prescribed to lower blood sugar levels in patients with type 2 diabetes. www.nlm.nih.gov/medlineplus/druginfo/meds/a606023.html (May 11, 2015).

Comments: has actually thought of shooting self.  Wife has removed guns from property.

AR 285.

Runyan recommended a referral to a psychiatrist.

On April 21, 2011, psychologist Benjamin Aleshire, Ph.D., prepared a comprehensive psychiatric evaluation for the agency.  Plaintiff complained of depression.  He told Dr. Aleshire that he has heard voices since he was ten or eleven years old; his mother told him it was a gift.  He also told Dr. Aleshire that he had a prescription for medical marijuana but had not used any in recent months for lack of funds.  Plaintiff told Dr. Aleshire that he considered trying heroin to see "what the lifestyle was like."  AR 292.

Plaintiff was able to walk without assistance.  He was well groomed, behaved appropriately and displayed good eye contact.  He had thoughts of suicide: two days earlier, he contemplated hanging himself.  He had never attempted suicide, however.

Dr. Aleshire generally assessed Plaintiff to have normal mental status.   He observed that Plaintiff "displayed a constricted range of affect and presented as 'dysphoric.'"  AR 292.  Although his intelligence was intact, Plaintiff's memory was mildly impaired, and his ability to perform basic math calculations was moderately impaired.  His attention was significantly impaired, and he did not demonstrate abstract thinking.  Abstract reasoning was impaired; insight and judgment were fair.  Dr.  Aleshire diagnosed:

| | |
|---|---|
| Axis I: | Major depressive disorder, recurrent, moderate. |
| Axis II: | Deferred. |
| Axis III: | Back pain. |
| | Leg pain. |
| | Diabetes. |
| | High blood pressure, |
| | High cholesterol. |
| | Asthma. |

///

///

6

Axis IV:     Unemployment.
               Lack of resources.
Axis V:      GAF = 55.

AR 293-294.

Dr. Aleshire added:

The claimant's functional level appears to be inadequate due to a mental health impairment.  The degree of mental health functioning appears moderately impaired.  The degree of claimant's current functional impairment is related to issues of depression.  It is believed that the claimant's mental health condition will not abate within the next 12 months given the nature of his condition, his current level of functioning and available resources.  At this time, the claimant recently began participating in mental health treatment.  It is likely that his symptoms will decrease in severity if he continues to do so.

AR 294.

Dr. Aleshire provided the following functional assessment:

Given the assessment and diagnosis, the claimant is currently capable of managing his own funds.

The claimant is able to adequately to [*sic*] perform one or two-step simple and repetitive task[s].  The claimant has a moderately impaired ability to adequately perform complex tasks.

The claimant has a good ability to accept instructions from supervisors and interact with coworkers and the public.

The claimant is able to perform work activities on a consistent basis without special or additional instruction.

The claimant has a moderately impaired ability to maintain regular attendance in the workplace.

The claimant has a moderately impaired ability to complete a normal workday or workweek without interruptions from a psychiatric condition.

The claimant is able to deal with the usual stressors encountered in a competitive workplace.

AR 294.

On June 1, 2011, consultant Stephen Bailey completed the psychiatric review technique based on Plaintiff's affective disorders (depressive symptoms).  Dr. Bailey opined that Plaintiff had

7

mild restriction of activities of daily living; moderate difficulties in maintaining social functioning and concentration, persistence, and pace; and no episodes of decompensation of extended duration. In summary, Dr. Bailey found that Plaintiff was generally not significantly limited in various functions except that he was moderately limited in the ability to understand and remember detailed instructions; to carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and to interact appropriately with the public.

On August 3, 2012, physician assistant Runyan noted that he had spoken with Dr. Cabatbat regarding Plaintiff's platelet count. Plaintiff, he wrote, needed a "long, serious discussion" about controlling his diabetes since Plaintiff's kidneys were leaking and other, unspecified issues also mandated a need for better control of his blood sugar. AR 342.

### D.    **Vocational Expert Testimony**

Vocational expert Malcolm Brodzinsky testified that Plaintiff's past work included landscape laborer (DOT No. 408.687-014, unskilled, SVP 2, heavy); short order cook (DOT No. 313.374-014, semi-skilled, SVP 3, light); security guard (DOT No. 372.667-034, semi-skilled, SVP 3, light); and automobile and bus detailer (DOT No. 915.687-034, unskilled, SVP 2, medium).

For the first hypothetical question, the ALJ directed Brodzinsky to assume a hypothetical person of the same age, education, and experience as Plaintiff, who could perform the full range of light employment in simple, repetitive, nonpublic tasks. Brodzinsky opined that the hypothetical person could perform Plaintiff's previous job of short order cook, explaining, "It has a SVP of 3, but it's basically the same activities over and over again, so I would consider that simple, repetitive tasks." AR 52. The hypothetical person could also perform the work of security guard, performed

///

as Plaintiff did, at a construction site where no public interaction was required, saying, "[T]hat's also an SVP of 3, but that's also relatively simple, repetitive tasks."  AR 53.

For the second hypothetical question, the ALJ directed Brodzinsky to assume the same hypothetical person described in the first hypothetical question, but with a twenty per cent reduction in concentration, persistence, and pace.  Brodzinsky opined that no work would be available for the second hypothetical person.

## III.   Discussion

### A.   Scope of Review

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, a court must determine whether substantial evidence supports the Commissioner's decision.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 402 (1971)), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's decision.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  The Court must uphold the ALJ's determination that the claimant is not disabled if the ALJ applied the proper legal standards and the ALJ's findings are supported by substantial evidence.  *See Sanchez v. Secretary of Health and Human Services*, 812 F.2d 509, 510 (9th Cir. 1987).  "Where the evidence as a whole can support either outcome, we may not substitute our judgment for the ALJ's."  *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

///

///

1

### B.    Legal Standards

2

To qualify for benefits, a claimant must establish that he or she is unable to engage in

3

substantial gainful activity because of a medically determinable physical or mental impairment

4

which has lasted or can be expected to last for a continuous period of not less than twelve months.

5

See 42 U.S.C. § 423(d)(2)(A); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  A claimant

6

must demonstrate a physical or mental impairment of such severity that he or she is not only unable

7

to do his or her previous work, but cannot, considering age, education, and work experience, engage

8

in any other substantial gainful work existing in the national economy.  *Id.*

9

To encourage uniformity in decision making, the Commissioner has promulgated regulations

10

prescribing a five-step sequential process for evaluating an alleged disability.  20 C.F.R. §§

11

404.1520; 416.920.  The process requires consideration of the following questions:

12

Step one:     Is the claimant engaging in substantial gainful activity?  If so, the
claimant is found not disabled.  If not, proceed to step two.

13

14

Step two:     Does the claimant have a "severe" impairment?  If so, proceed to
step three.  If not, then a finding of not disabled is appropriate.

15

16

Step three:     Does the claimant's impairment or combination of impairments
meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so,
the claimant is automatically determined disabled.  If not, proceed to step four.

17

18

Step four:     Is the claimant capable of performing his past work?  If so, the
claimant is not disabled.  If not, proceed to step five.

19

20

Step five:     Does the claimant have the residual functional capacity to perform
any other work?  If so, the claimant is not disabled.  If not, the claimant is
disabled.

21

22

*Lester v. Chater*, 81 F.3d 821, 828 n. 5 (9th Cir. 1995).

23

If a claimant is found "disabled" or "not disabled" at any step, the remaining steps need not be

24

addressed.  *Tackett*, 180 F.3d at 1098.

25

At steps one through four, the claimant bears the burden of proof, subject to the presumed

26

27

non-adversarial nature of Social Security hearings and the Commissioner's affirmative duty to assist

28

10

claimants in developing the record whether or not they are represented by counsel. *Tackett*, 180 F.3d at 1098 n. 3; *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996).  If the first four steps are adequately proven, the burden shifts to the Commissioner to prove at step five that considering the claimant's residual functional capacity, age, education, and work experience, he or she can perform other work that is available in significant numbers. *Tackett*, 180 F.3d at 1098; *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998).

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 13, 2010.  His severe impairments were obesity, uncontrolled diabetes mellitus, mild disorders of the spine, and an affective disorder.  None of these impairments alone or in any combination met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appx. 1 (§§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), except that he was limited to simple, repetitive, nonpublic tasks.  Plaintiff was able to perform his past relevant work as a short order cook or security guard.  And, even if Plaintiff were unable to perform his past relevant work, application of the Grids indicated that Plaintiff, who could perform nearly any unskilled, light job, was not disabled.  Accordingly, the ALJ concluded that Plaintiff was not disabled.

### C.    Under-Inclusive Hypothetical Question

Plaintiff contends that the ALJ erred in failing to explain her omission of significant probative evidence expressed in Dr. Aleshire's evaluation from her hypothetical question concerning light employment in simple, repetitive, nonpublic tasks.  Although Plaintiff does not explicitly identify the omitted evidence, context indicates that Plaintiff challenges the ALJ's failure to articulate Dr. Aleshire's opinion that Plaintiff was moderately impaired in his ability (1) to maintain regular attendance and (2) to complete a normal workday or workweek without interruptions from his psychiatric impairment.  The Commissioner responds that the Ninth Circuit previously rejected

Plaintiff's argument in *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008).  The Court agrees with Plaintiff's argument.

The Commissioner contends that under *Stubbs-Danielson*, "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony."  539 F.3d at 1174.  In *Stubbs-Danielson*, although some evidence indicated that the claimant worked at a slow pace, the medical sources opined only that the claimant could perform "simple tasks."  *Id.* at 1173-74.  Accordingly, the ALJ found that the claimant's residual functional capacity limited the claimant to "simple, routine, repetitive sedentary work."  *Id.* at 1173.  The Ninth Circuit Court of Appeals concluded that the ALJ did not err either in formulating hypothetical questions to the vocational expert or in determining the residual functional capacity.

When the medical source statements include additional specific restrictions such as limitations of concentration, persistence, or pace, however, an ALJ errs if he or she refers only to "simple, repetitive work," without addressing the additional concrete limitations set forth in medical opinion.  *Brink v. Commissioner of the Social Security Administration*, 343 Fed. Appx. 211, 212 (9th Cir. 2009).  In distinguishing *Brink* from *Stubbs-Danielson*, the court explained:

> In *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, (9th Cir. 2008), we held that an "assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with the restrictions identified in the medical testimony."  *Id.* at 1174.  The medical history in *Stubbs-Danielson*, however, did not establish any limitations in concentration, persistence, or pace.  Here, in contrast, the medical evidence establishes, as the ALJ accepted, that Brink does have difficulties with concentration, persistence, or pace.  *Stubbs-Danielson*, therefore, is inapposite.
>
> *Brink*, 343 Fed.Appx. at 212.

In other words, an assessment cannot be "consistent with the restrictions identified in the medical testimony" when it omits restrictions identified in the medical testimony, such as impairments in concentration, persistence, or pace.  *See Andrews v. Shalala*, 53 F.3d 1035, 1044 (9th

Cir. 1995) (holding that a hypothetical question must include all of the claimant's limitations if the vocational expert's testimony is to be considered substantial evidence). *See also, e.g., Janovich v. Colvin*, 2014 WL 4370673 at *7 (E.D.Cal. Sept. 2, 2014) (No. 2:13-cv-00096-DAD); *Kuharski v. Colvin*, 2014 WL 3385183 at *3 (E.D.Cal. July 10, 2014) (No. 2:12-cv-01055-AC); *Barraza v. Colvin*, 2014 WL 651909 at *8 (E.D.Cal. Feb. 19, 2014) (No. 2:13-cv-00430-JAM-DAD); *San v. Colvin*, 2013 WL 1281590 at *7-*8 (E.D.Cal. Mar. 26, 2013) (No. 1:11-cv-01211-BAM); *Van Duong v. Astrue*, 2012 WL 3648006 at *4-*5 (E.D.Cal. Aug. 22, 2012) (No. 2:11-cv-00347-KJN); *Cagle v. Astrue*, 2012 WL 761727 at *4-*5 (E.D.Cal. Mar. 8, 2012) (No. 2:10-cv-02240-KJN).

The reasoning in *Brink* applies here. Although the ALJ gave great weight to the opinions of Dr. Aleshire and Dr. Bailey, she failed to address with any specificity the additional limitations each expressed. In Dr. Aleshire's case, these impairments included moderate impairment of Plaintiff's ability to maintain regular attendance and to complete a normal workday or workweek without interruptions from his psychiatric impairment. Dr. Bailey opined that Plaintiff was moderately limited in the ability to understand and remember detailed instructions; to carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule , maintain regular attendance, and be punctual within customary tolerances; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and to interact appropriately with the public. (While the ALJ did acknowledge limitations of concentration, persistence, and pace in the second hypothetical question, no evidentiary basis supports the arbitrary figure of a twenty per cent reduction of function included in that question.)

Because nothing in the record supports a conclusion that Plaintiff had retained the ability to perform unskilled work in light of the additional limitations identified by Drs. Aleshire and Bailey, the Court rejects the Commissioner's argument that the ALJ's error was harmless. *See, e.g., Lubin v.*

*Commissioner of Social Security Administration*, 507 Fed.Appx. 709, 712 (9th Cir. 2013); *Lim v. Astrue*, 2011 WL 3813100 at * 7 (E.D.Cal. Aug. 29, 2011) (No. 2:10-cv-00958-KJN).

Accordingly, the Court finds that, under the facts of this case, *Stubbs-Danielson* does not control.  As in *Brink*, the ALJ failed to address additional limitations articulated by two medical experts to whom she gave great weight.  The Court will remand this case to the Commissioner for further proceedings to determine an accurate residual functional capacity for Plaintiff and to address Plaintiff's ability to perform work in light of the accurate residual functional capacity.  Because the Court remands for reformulation of Plaintiff's residual functional capacity, it need not reach the question of Plaintiff's ability to perform his past work in light of the residual functional capacity set forth in the hearing decision.

**IV.    Conclusion and Order**

Because the ALJ failed to consider additional limitations in the medical source statements to which she gave great weight, the Court REMANDS this case to the Commissioner for further proceedings to determine an accurate residual functional capacity for Plaintiff and to address Plaintiff's ability to perform work in light of the accurate residual functional capacity.  The Clerk of Court is directed to enter judgment for the Plaintiff.

IT IS SO ORDERED.

Dated:   **May 27, 2015**                              **/s/ Sandra M. Snyder**
                                                        UNITED STATES MAGISTRATE JUDGE